UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

MSC Mediterranean Shipping Co. SA, Geneva,

   *Plaintiff,*

vs.

Metal Worldwide, Inc., a Florida corporation, and
Sachin Chhabra, individually,

   *Defendants.*
_____/

## COMPLAINT FOR DAMAGES

The Plaintiff MSC Mediterranean Shipping Co. SA, Geneva ("MSC"), by and through undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure and the Federal Statutes referenced herein, hereby files this Complaint against Metal Worldwide, Inc., a Florida corporation and Sachin Chhabra, individually.

### PARTIES, VENUE & JURISDICTION

1. MSC is a foreign corporation that is registered to do business in the State of Florida.

2. At all times material hereto, Metal Worldwide, Inc. ("Metal Worldwide") was a Florida corporation with offices and/or a principal place of business at 1444C South Belcher Road, Suite 109, Clearwater, Florida 33764.

3. Metal Worldwide, at all times material hereto, personally or through its agents and/or employees:

   a. operated, conducted, engaged in, or carried on a business venture in this state and/or Miami-Dade and Broward County;

CASE NO.

    b.    was engaged within substantial activity within this state; and/or

    c.    committed one of more of the acts specified in Florida Statute §48.193.

4.    At all times material hereto, Sachin Chhabra ("Chhabra"), was a resident of the State of Florida.

5.    At all times material hereto, Chhabra was an officer, director and/or shareholder of Metal Worldwide.

6.    At all times material hereto, Chhabra personally or through his agents and/or employees:

    a.    operated, conducted, engaged in, or carried on a business venture in this state and/or Miami-Dade and Broward County;

    b.    was engaged within substantial activity within this state; and/or

    c.    committed one of more of the acts specified in Florida Statute §48.193.

7.    Venue in this Court is proper pursuant to 28 U.S.C. §1391 as Metal Worldwide's and Chhabra's conduct, acts, and omissions which give rise to this action occurred in Ft. Lauderdale, Florida.

8.    Venue is also proper pursuant to paragraph 10.3 of the governing Bills of Lading (attached hereto as Composite Exhibit "A"). A true and correct copy of the Standard Terms & Conditions of the attached Bills of Lading is attached hereto as Exhibit A-1.

9.    This is an Admiralty and Maritime Claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333.

10.    Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens

CASE NO.

of the State of Florida and of a foreign state.

11.  This Honorable Court has federal subject matter jurisdiction based upon the above.

12.  Accordingly, Metal Worldwide and Chhabra are subject to the jurisdiction of this Court.

### ALLEGATIONS OF FACT RELEVANT TO ALL COUNTS

13.  On or about May and June 2010, Metal Worldwide contracted with MSC for the transportation of a shipment of shredded steel scrap from Port Everglades, Florida to Chennai, India.

14.  The shipment was packed and sealed by Metal Worldwide, as merchant and shipper, in 149 containers.

15.  The containers were shipped pursuant to the following Bills of Lading, attached hereto as Composite Exhibit "A":

(a)  MSCUTM971275;

(b)  MSCUTM971275A

(c)  MSCUTM971283;

(d)  MSCUTM968800;

(e)  MSCUTM968891;

(f)  MSCUTM971010;

(g)  MSCUTM971762;

(h)  MSCUTM974279;

(i)  MSCUTM974287;

(j)  MSCUTM974303;

CASE NO.

    (k)    MSCUTM977116;

(Collectively, the "Bills of Lading"). The Bills of Lading served as the contracts of carriage for each respective shipment and container.

    16.    Each and every one of the Bills of Lading expressly state that "multiple units of shredded steel scrap" were contained in the respective containers. *See* Composite Exhibit "A".

    17.    Each of the respective containers were packed and sealed by Metal Worldwide. The particulars of each respective container as reflected in the Bills of Lading were furnished by Metal Worldwide.

    18.    Each and every one of the Bills of Lading expressly state "PARTICULARS FURNISHED, BY THE SHIPPER – NOT CHECKED BY CARRIER – CARRIER NOT RESPONSIBLE – See Clause 14". *Id.*

    19.    Clause 14 of each and every one of the Bills of Lading states, in part:

> **14.    DESCRIPTION OF GOODS AND MERCHANT'S RESPONSIBILITY** (bold in original)
> ...
> 14.2 No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, temperature, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.
> ...
> 14.6 **The Merchant shall** comply with all regulations or requirements of customs, port and other authorities, and shall bear and **pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional carriage undertaken), incurred or suffered by reason thereof, or by reason of any** illegal, **incorrect** or insufficient **declaration**, marking, numbering or addressing **of the Goods, and shall indemnify the Carrier in respect thereof, including reasonable legal expenses and costs.**
>
> 14.7 **If by order of the authorities at any place, Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected for any reason whatsoever,** including but not limited to for a breach or infringement of a trademark, patent or other intellectual property right, the Carrier will not be liable for any loss or damage

4

> whatsoever incurred as a result of any opening, unpacking, inspection, re-packing, detention, destruction or delay. **The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, including reasonable legal expenses and costs resulting from such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.**

Exhibit A-1 (emphasis added).

20. Each and every one of the Bills of Lading further provides:

> **16. FREIGHT AND CHARGES** (bold in original)
> …
> 16.2 **All Freight is earned and due upon receipt of the Goods by the Carrier**, whether the Freight is prepaid or collect and the Carrier shall be entitled to all Freight due under all circumstances, ship and/or cargo lost or not lost or the voyage abandoned. **All Freight shall be paid when due without any set-off, counter claim, or deduction.** (emphasis added).
>
> **20. NOTIFICATION AND DELIVERY** (bold in original)
> …
> 20.4 … **The Carrier shall be entitled to an indemnity from the Merchant for all costs whatsoever incurred, including legal costs, for the** cleaning and **disposal of Goods refused and/or abandoned by the Merchant.**

*Id.* (emphasis added).

21. Contrary to the representations made by Metal Worldwide in the Bills of Lading, the subject containers contained waste material, not shredded steel scrap. This was not discovered by MSC until after the containers arrived at the port of discharge in Chennai, India.

22. On or about August 2010, as a result of Metal Worldwide's mis-declaration of the contents of the Bills of Lading, the Docks Intelligence Unit (India's customs authority) began inquiry and in the month of June 2011, seized 143 containers were seized along with cargo.

23. On September 23, 2010, September 29, 2010, October 20, 2010, October 27, 2010, December 21, 2010 and December 28, 2010, MSC placed Metal Worldwide on notice via written correspondence that the containers had not been collected, that demurrage charges had

CASE NO.

been accruing and that MSC would hold Metal Worldwide liable "for any and all prejudice, financial and otherwise, including costs, expenses, levies, fees, duties, taxes and all disposal action charges and handling and demurrage amounts that [MSC] has suffered or may suffer as a result of [Metal Worldwide's] breach under the B/L contract and/or negligence in respect of the captioned shipment, under the terms of the captioned Bill of Lading."  *See* Notices attached hereto as Composite Exhibit "B".

24.	MSC further put Metal Worldwide on notice that it would "seek recovery of all such amounts from [Metal Worldwide], by using all lawful means available to us." *Id*.

25.	On or about May 9, 2011, Chhabra, as President of Metal Worldwide, sent a letter wherein Metal Worldwide abandoned the subject containers and gave MSC the right to dispose of the contents of the subject containers.  *See* May 9, 2011 Letter from Metal Worldwide, Inc. attached hereto as Exhibit "C".

26.	As a direct and proximate result of the mis-declarations made by Metal Worldwide, MSC has incurred $859,453.26 in demurrage charges.

27.	As a direct and proximate result of the mis-declaration by Metal Worldwide, MSC is liable for the storage costs of the containers.  As a further direct and proximate result of the mis-declaration by Metal Worldwide MSC is subject to potential fines to be imposed by the Indian government.

28.	Metal Worldwide has also failed to pay the outstanding balance of $138,736.90 of freight charges for the containers transported from Ft. Lauderdale, Florida to Chennai, India.

29.	MSC has performed all of its obligations under the Bills of Lading.

30.	All conditions precedent to the filing of this lawsuit have occurred.

CASE NO.

## COUNT I – BREACH OF CONTRACT (FREIGHT CHARGES) (METAL WORLDWIDE)

MSC re-alleges and incorporates by reference paragraphs 1-30 as if fully set forth herein.

31. At all material times, there existed several contracts of carriage between MSC and Metal Worldwide. *See* Composite Exhibit "A".

32. Metal Worldwide breached the contracts of carriage by failing to pay the freight charges due for the transportation pursuant to the contracts of carriage.

33. As a result, MSC has suffered damages, including but not limited to, $138,736.90 in unpaid freight charges.

WHEREFORE, MSC requests the Court enter judgment against Metal Worldwide in the full amount of MSC's damages, plus prejudgment interest, attorneys' fees, and costs.

## COUNT II - BREACH OF CONTRACT (MIS-DECLARATION OF CARGO) (METAL WORLDWIDE)

MSC re-alleges and incorporates by reference paragraphs 1- 30 as if fully set forth herein.

34. At all material times, there existed several contracts of carriage between MSC and Metal Worldwide. *See* Composite Exhibit "A".

35. Metal Worldwide had a contractual obligation to accurately declare the weight and contents of the subject containers on the respective Bills of Lading.

35. Metal Worldwide breached the contracts of carriage when it incorrectly declared and described the cargo that was loaded and stowed in the respective containers transported by MSC.

36. As a result of Metal Worldwide's breaches of the contracts of carriage, MSC has suffered damages, including but not limited to, $859,453.26 in demurrage charges, storage fees and fines by the Indian government.

7

WHEREFORE, MSC requests the Court enter judgment against Metal Worldwide in the full amount of MSC's damages, plus prejudgment interest, attorneys' fees, and costs.

### COUNT III - CONTRACTUAL INDEMNIFICATION
### (METAL WORLDWIDE)

MSC re-alleges and incorporates by reference paragraphs 1- 30 as if fully set forth herein.

37. At all material times, there existed several contracts of carriage between MSC and Metal Worldwide. *See* Composite Exhibit "A".

38. The contracts of carriage require Metal Worldwide to indemnify MSC against any liability resulting from any incorrect declaration of cargo transported. *See id.* at ¶¶ 14, 20.

39. Specifically, Metal Worldwide agreed to "bear all duties, taxes, fines, imposts, expenses or losses…incurred or suffered…by reason of any illegal, incorrect, or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof[.]" *Id.* at ¶14.6.

40. Accordingly, Metal Worldwide is required to indemnify MSC against any and all liability MSC has incurred and may incur in the future arising out of Metal Worldwide's failure to correctly and sufficiently declare the contents of the Bills of Lading.

WHEREFORE, MSC demands indemnification from Metal Worldwide pursuant to the Bills of Lading against any and all liability MSC has incurred and may incur in the future arising out of Metal Worldwide's failure to correctly and sufficiently declare the contents of the Bills of Lading.

### COUNT IV - COMMON LAW INDEMNIFICATION
### (METAL WORLDWIDE)

MSC re-alleges and incorporates by reference paragraphs 1- 30 as it fully set forth herein.

41. In the alternative to Count III, Metal Worldwide has a common law duty to

8

CASE NO.

indemnify MSC.

42. At all material times, there existed several contracts of carriage between MSC and Metal Worldwide. *See* Composite Exhibit "A".

43. MSC's duty under these contracts of carriage was to transport and deliver certain cargo to Chennai, India.

44. MSC fulfilled its obligations and discharged its duties pursuant to the contracts of carriage.

45. As a result of discharging its duties pursuant to the contracts of carriage, MSC has incurred and continues to incur liability including, but not limited to, demurrage charges, storage fees and fines by the Indian government.

46. The liability MSC has incurred and continues to incur is solely due to the fault of Metal Worldwide. Specifically, MSC has incurred and continues to incur liability due to Metal Worldwide's mis-declaration of the contents of the Bills of Lading.

47. MSC is entirely without fault for the liability it has incurred and continues to incur.

WHEREFORE, MSC demands indemnification from Metal Worldwide against any and all liability MSC has incurred and may incur in the future arising out of Metal Worldwide's failure to correctly and sufficiently declare the contents of the Bills of Lading.

### COUNT V – CONTRIBUTION (METAL WORLDWIDE)

MSC re-alleges and incorporates by reference paragraphs 1- 30 as if fully set forth herein.

48. In the alternative to Counts III and IV, Metal Worldwide has a duty to contribute to MSC's share of liability.

49. At all material times, there existed several contracts of carriage between MSC and

9

CASE NO.

Metal Worldwide. *See* Composite Exhibit "A".

50. MSC's duty under these contracts of carriage was to transport and deliver certain cargo to Chennai, India.

51. MSC fulfilled its obligations and discharged its duties pursuant to the contracts of carriage.

52. As a result of discharging its duties pursuant to the contracts of carriage, MSC has incurred and continues to incur liability including, but not limited to, demurrage charges, storage fees and fines by the Indian government.

53. The liability MSC has incurred and continues to incur is solely due to the fault of Metal Worldwide. Specifically, MSC has incurred and continues to incur liability due to Metal Worldwide's mis-declaration of the contents of the Bills of Lading.

54. MSC is entirely without fault for the liability it has incurred and continues to incur.

55. As MSC is without fault, MSC has been forced to pay more than its fair share of the damages arising out of Metal Worldwide's mis-declaration of the contents of the Bills of Lading.

WHEREFORE, MSC demands contribution from Metal Worldwide for any and all expenses MSC has incurred and may incur in the future arising out of Metal Worldwide's failure to correctly and sufficiently declare the contents of the Bills of Lading.

## COUNT VI – FRAUDULENT MISREPRESENTATION (METAL WORLDWIDE)

MSC re-alleges and incorporates by reference paragraphs 1- 30 as if fully set forth herein.

56. Metal Worldwide furnished the information set forth in the Bills of Lading with respect to the weight and content of the contents of the subject containers.

CASE NO.

57. Metal Worldwide made a false statement of a material fact to MSC when it declared that that the subject containers contained sheet scrap metal.

58. In fact, the subject containers contained waste.

59. At the time Metal Worldwide made its declarations on the Bills of Lading, and at all times material hereto, Metal Worldwide knew that the subject containers contained waste, not scrap metal.

60. Metal Worldwide made its misrepresentations with the intention of inducing MSC to transport the subject containers from the United States to India.

61. MSC justifiably relied on the representations Metal Worldwide made in the Bills of Lading.

62. As a direct and proximate result of the mis-declarations made by Metal Worldwide, MSC has incurred $859,453.26 in demurrage charges.

63. As a direct and proximate result of the mis-declaration by Metal Worldwide, MSC is liable for the storage costs of the containers. As a further direct and proximate result of the mis-declaration by Metal Worldwide MSC is subject to potential fines to be imposed by the Indian government.

WHEREFORE, MSC requests the Court enter judgment against Metal Worldwide in the full amount of MSC's damages, plus prejudgment interest, attorneys' fees, and costs.

## COUNT VII – FRAUDULENT MISREPRESENTATION (CHHABRA)

MSC re-alleges and incorporates by reference paragraphs 1- 30 and 56-63 as if fully set forth herein.

64. At all times material hereto, Chhabra served as a director or officer of Metal Worldwide.

11

CASE NO.

65. At all times material hereto, Chhabra was actually aware of the mis-declarations contained in the Bills of Lading.

66. At all times material hereto, Chhabra encouraged, perpetuated, and/or acquiesced in Metal Worldwide's misrepresentations.

WHEREFORE, MSC requests the Court enter judgment against Chhabra in the full amount of MSC's damages, plus prejudgment interest, attorneys' fees, and costs.

## COUNT VIII – NEGLIGENT MISREPRESENTATION (METAL WORLDWIDE)

MSC re-alleges and incorporates by reference paragraphs 1- 30 as if fully set forth herein.

67. Metal Worldwide furnished the information set forth in the Bills of Lading with respect to the weight and content of the contents of the subject containers.

68. Metal Worldwide made a false statement of a material fact to MSC when it declared that that the subject containers contained scrap metal.

69. In fact, the subject containers contained waste.

70. At the time Metal Worldwide made its declarations on the Bills of Lading, and at all times material hereto, Metal Worldwide should have known that the subject containers contained waste, not scrap metal.

71. Metal Worldwide made its misrepresentations with the intention of inducing MSC to transport the subject containers from the United States to India.

72. MSC justifiably relied on the representations Metal Worldwide made in the Bills of Lading.

73. As a direct and proximate result of the mis-declarations made by Metal Worldwide, MSC has incurred $859,453.26 in demurrage charges.

74. As a direct and proximate result of the mis-declaration by Metal Worldwide,

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Suite 2300, Miami, FL 33131 Tel: 305-358-6555/Fax: 305-374-9077

CASE NO.

MSC is liable for the storage costs of the containers. As a further direct and proximate result of the mis-declaration by Metal Worldwide MSC is subject to potential fines to be imposed by the Indian government.

WHEREFORE, MSC requests the Court enter judgment against Metal Worldwide in the full amount of MSC's damages, plus prejudgment interest, attorneys' fees, and costs.

### COUNT IX – NEGLIGENT MISREPRESENTATION (CHHABRA)

MSC re-alleges and incorporates by reference paragraphs 1- 30 and 67-74 as if fully set forth herein.

75. At all times material hereto, Chhabra served as a director or officer of Metal Worldwide.

76. At all times material hereto, Chhabra was actually aware of the mis-declarations contained in the Bills of Lading.

77. At all times material hereto, Chhabra encouraged, perpetuated, and/or acquiesced in Metal Worldwide's misrepresentations.

WHEREFORE, MSC requests the Court enter judgment against Chhabra in the full amount of MSC's damages, plus prejudgment interest, attorneys' fees, and costs.

### COUNT X – PIERCING THE CORPORATE VEIL (CHHABRA)

MSC re-alleges and incorporates by reference paragraphs 1- 63 and 67-74 as if fully set forth herein.

78. At all times material hereto, Metal Worldwide was dominated and controlled by Chhabra in such a way that Metal Worldwide was merely Chhabra's alter ego.

79. At all times material hereto, Metal Worldwide was used for Chhabra's benefit.

80. Chhabra used Metal Worldwide to fraudulently induce MSC to transport the

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Suite 2300, Miami, FL 33131 Tel: 305-358-6555/Fax: 305-374-9077

CASE NO.

subject containers from the United States to India.

81. As a direct and proximate result of Chhabra's fraudulent use of Metal Worldwide, MSC has incurred $859,453.26 in demurrage charges.

82. As a direct and proximate result of Chhabra's fraudulent use of Metal Worldwide, MSC is liable for the storage costs of the containers. As a further direct and proximate result of the mis-declaration by Chhabra, MSC is subject to potential fines to be imposed by the Indian government. .

WHEREFORE, MSC requests the Court enter judgment against Metal Worldwide in the full amount of MSC's damages, plus prejudgment interest, attorneys' fees, and costs and holding Chhabra personally liable for all acts of Metal Worldwide as set forth more specifically in Counts I-VI and Count VIII.

Dated: July 25, 2011
Miami, Florida

Respectfully submitted,

**FOREMAN FRIEDMAN, PA**

BY: /s/*Brett M. Berman, Esq.*
Jeffrey E. Foreman, Esq.
Florida Bar No. 0240310
jforeman@fflegal.com
Karina M. Cerda, Esq.
Florida Bar No. 626775
kcerda@fflegal.com
Brett M. Berman, Esq.
Florida Bar No. 68221
bberman@fflegal.com
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL 33131
Phone: 305-358-6555
Fax: 305-374-9077
*Attorneys for Plaintiff*