UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-61634-Civ-SCOLA

MSC MEDITERRANEAN SHIPPING CO.
SA, GENEVA,

    Plaintiff,
vs.

METAL WORLDWIDE, INC., *et al.*,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment (ECF No. 58). For the reasons explained in this Order, the Motion is granted as to Counts I, & II on the issue of breach of contract. The Motion is denied as to Counts III & X on the issues of contractual indemnity and piercing the corporate veil.

## I.  BACKGROUND[1]

This is a dispute over an alleged breach of a maritime contract for the shipment of goods. The Defendant, Metal Worldwide, Inc., contracted with the Plaintiff, MSC Mediterranean Shipping Co. SA, Geneva, to transport a shipment of shredded steel scrap from Fort Lauderdale, Florida to Chennai, India. Metal Worldwide's shredded steel scrap supply was being provided by Sunco Metals. Sunco obtained empty containers and purported to load them with the shredded steel scrap and then sealed the containers. Metal Worldwide did not have a representative present when the containers were loaded and sealed. However, Metal Worldwide represented to MSC that the containers were filled with shredded steel scrap and further represented to MSC that the containers each weighed between twenty and twenty-five tons. The containers were delivered to the Port Everglades Terminal, in Fort Lauderdale, Florida, and

---

[1] These facts are taken from MSC's Statement of Facts, (ECF No. 58). Since Metal Worldwide did not file an opposing statement of facts controverting MSC's Statement of Facts, the facts are deemed admitted to the extent that they are supported by evidence in the record. Fed. R. Civ. P. 56(e); S.D. Fla. L.R. 56.1(b); *see also Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1245-46 (S.D. Fla. 2009).

loaded onto an MSC vessel. The containers were shipped under Bills of Lading, and the respective Bills of Lading served as the contracts of carriage for the containers.

The containers were shipped to Chennai, India, and were still sealed when they arrived. Upon opening the containers in India, it was discovered that the containers were not filled with shredded steel scrap, but were instead loaded with dirt. India's customs authority launched an inquiry and seized the containers. MSC notified Metal Worldwide of the problem with the containers, and explained that Metal Worldwide would be responsible for demurrage charges that were accruing. MSC continues to incur demurrage charges from the container freight station where the containers are presently held. MSC will incur a fine from the Indian Government for the mis-declaration of the contents of the containers, and will also be responsible for the costs associated with disposing or destroying the contents of the containers once they are released by the Indian Government.

In April 2011, Metal Worldwide dissolved. Subsequently, Defendant Sachin Chhabra, as President of Metal Worldwide, sent a letter to MSC abandoning the containers and giving MSC the right to dispose of the contents.

## II. LEGAL STANDARDS

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be

significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### III. DISCUSSION

This Court has jurisdiction over this matter and federal maritime law applies to the parties' dispute. A bill of lading is the basic transportation contract between the shipper-consignor and the carrier.[2] *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982). Each term of the bill of lading "has in effect the force of a statute, of which all affected must take notice." *Id.* at 343. A bill of lading that requires a substantial carriage of goods by sea for the purpose of effectuating maritime commerce is a maritime contract. *Altadis USA, Inc. ex rel. Fireman's Fund Ins. Co. v. Sea Star Line, LLC*, 458 F.3d 1288, 1294 (11th Cir. 2006) (quoting *Norfold S. Ry. Co. v. Kirby*, 543 U.S. 14, 27 (2004)). Federal courts have primary jurisdiction over maritime contracts. *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 837 (11th Cir. 2010). The bills of lading that are the subject of this litigation involved a substantial carriage of goods by sea for the purpose of effectuating maritime commerce. (*See* Stmt. of Material Facts ¶ 1, ECF No. 58.)

### A. Count I: Metal Worldwide Breached Its Contract With MSC By Failing To Pay Freight Charges

The Bills of Lading establish that all charges, costs and expenses due to MSC ("freight") were earned and due upon receipt of the goods by MSC. (Stmt. of Material Facts ¶ 17, ECF No. 58.) Under the terms of the Bills of Lading, the freight is due to be paid without any set-off, counter claim, or deduction. (*Id.*) The goods have been received and transported by MSC, and the freight is now due. (*See id.* at ¶ 18.) Despite the freight being due, Metal Worldwide has failed to pay freight charges in the amount of $138,736.90. (*Id.* at ¶ 19.) "Metal Worldwide does not deny that some of the freight charges set forth on the bills of lading were not paid." (Defs.' Resp. 5, ECF No. 66.) It is Metal Worldwide's position that it is not responsible for the unpaid freight charges based on the defense of equitable estoppel. (*Id.*)

---

[2] Here, Metal Worldwide is the shipper/merchant and MSC is the carrier. The identity of the consignor is not relevant to the determination of the issues presented in MSC's motion for summary judgment.

The doctrine of equitable estoppel "is grounded on a notion of fair dealing and good conscience. It is designed to aid the law in the administration of justice where without its aid injustice might result." *DeShong v. Seaboard Coast Line R.R. Co.*, 737 F.2d 1520, 1522 (11th Cir. 1984). The doctrine protects a party who has relied in good faith upon the representation of another, when the party has changed his or her position for the worse based on this reliance. *Marine Transp. Servs. Sea-Barge Grp., Inc. v. Python High Perform. Marine Corp.*, 16 F.3d 1133, 1138-39 (11th Cir. 1994). Under this doctrine, the party making the representation is estopped, or prevented, from taking a position contrary to its initial representation that is detrimental to a party who reasonably relied on the initial representation. *Id.* Equitable estoppel "requires (1) a representation of fact by one party contrary to a later asserted position; (2) good faith reliance by another party upon the representation; and (3) a detrimental change in position by the later party due to the reliance." *Id.* at 1139.

Metal Worldwide's equitable estoppel argument is that MSC weighed the containers when they were loaded onto the vessel for shipping. (Defs.' Resp. 6, ECF No. 66.) Once weighed, MSC became aware that the containers weighed significantly less than would be expected of containers full of shredded steel scrap. (*Id.*) Metal Worldwide has not articulated what representation of fact it contends that MSC made to it. Metal Worldwide has failed to cite any record evidence establishing that MSC made any representations to Metal Worldwide regarding the weight or contents of the containers. The record evidence before this Court reveals that MSC did not make any such representations to Metal Worldwide. The Bills of Lading read: "No representation is made by [MSC] as to the weight, contents, . . . [or] description . . . of the Goods and [MSC] shall be under no responsibility whatsoever in respect of such description or particulars." (Stmt. of Material Facts ¶ 16, ECF No. 58.) In other words, the Bills of Lading unambiguously state that MSC is *not* making any representations regarding the weight or contents of the containers.

Here, the evidence reveals that MSC did not make any representations to Metal Worldwide. Even if it had, Metal Worldwide's reliance was not reasonable based on the language in the Bills of Lading. Finally, Metal Worldwide has not cited to any record evidence establishing that it undertook a detrimental change in position based on MSC's purported representations. Consequently, Metal Worldwide has failed to establish any element necessary to prevail under the doctrine of equitable estoppel. Based on the undisputed evidence cited by

MSC, summary judgment will be granted as to Count I against Metal Worldwide for breach of contract due to its failure to pay the freight required by the Bills of Lading.

### B. Count II: Metal Worldwide Breached Its Contract With MSC By Incorrectly Declaring and Describing The Cargo That Was Loaded and Stowed in The Respective Containers Transported by MSC

The Bills of Lading provide:

> The Merchant warrants to the Carrier that the particulars relating to the Goods as set out on the front hereof have been checked by or on behalf of the Merchant on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Merchant, are adequate and correct.

(Bill of Lading ¶ 14.3, ECF No. 58-5.) Under this provision, Metal Worldwide was obligated to verify the contents of the containers, and to provide MSC with an accurate description of the contents. Relatedly, MSC expressly disclaimed any obligation or responsibility for identifying the contents or weight of the subject containers. (Stmt. of Material Facts ¶ 16, ECF No. 58.) (*Id.* ¶ 16.)

There is no dispute that Metal Worldwide failed to verify the contents of the containers and further failed to provide MSC with an accurate description of the contents of the shipping containers. (Stmt. of Material Facts ¶¶ 6-8, 13-14, 21-22, ECF No. 58.) Metal Worldwide has not even addressed this argument in its response to MSC's summary judgment motion. (*See* Defs.' Resp. 5-8, ECF No. 66.) Given the undisputed record, summary judgment will be granted in favor of MSC on its breach of contract claim (Count II) for Metal Worldwide's failure to accurately declare the weight and contents of the subject containers.

### C. Count III: There Is a Genuine Issue as To Whether Metal Worldwide Is Contractually Obligated To Indemnify MSC For All Liability MSC Has Incurred and Will Incur Arising Out of The Inaccurate Declaration of The Contents of The Containers In The Bills Of Lading

MSC argues that Metal Worldwide is obligated, under the terms of the Bills of Lading, to indemnify it for all liabilities incurred resulting from Metal Worldwide's misidentification of the contents of the containers. (Mot. Summ. J. 15-16, ECF No. 58.) Metal Worldwide counters that the liabilities incurred by MSC relating to the misidentification of the contents of the shipping containers are due, at least in part, to MSC's own negligence. (Defs.' Resp. 7, ECF No. 66.) Metal Worldwide argues that the indemnification provisions of the Bills of Lading do not provide for the indemnification of MSC for its own negligence. (Defs.' Resp. 7, ECF No. 66.)

Under Maritime Law, a party may only recover under a claim for contractual indemnity for its own acts of negligence "when the intent to so indemnify is expressed in plain, clear, and unequivocal terms." *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001). In this case, the Bills of Lading state:

> 14.6 The Merchant shall . . . pay all duties, taxes, fines, imposts, expenses or losses, . . . incurred or suffered . . . by reason of any illegal, incorrect or insufficient declaration . . . of the Goods, and shall indemnify the Carrier in respect thereof, including reasonable legal expenses and costs.
>
> 14.7 If by order of the authorities at any place, Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected for any reason whatsoever, . . . the Carrier will not be liable for any loss or damage whatsoever incurred . . . . The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, including reasonable legal expenses and costs resulting from such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.

(Stmt. of Material Facts ¶ 16, ECF No. 58.)

The language of the Bills of Lading do not provide for the indemnification of MSC for its own negligence because that intent is not plainly and clearly expressed. Accordingly, MSC can only prevail on summary judgment if it can establish that there is no evidence that it was negligent, even in some small part, for the damages it incurred as a result of the mis-declaration of the containers.

MSC has presented some evidence to support its position that it was not negligent in causing the containers to be incorrectly identified to the Indian Government, resulting in the demurrage charges and impending fine. MSC argues that its business model involves three separate and independent departments: a Booking Department, a Documentation Department, and a Planning Department. (Pl.'s Reply, 5-6, ECF No. 74.) MSC's Booking Department and the Documentation Department relied completely on the information provided by Metal Worldwide regarding the weight and contents of the containers, pursuant to the plain language in the Bills of Lading. (*Id.*; *see also* Stmt. of Material Facts ¶ 15, ECF No. 58 (explaining the front of the Bills of Lading expressly state "PARTICULARS FURNISHED BY THE SHIPPER – NOT CHECKED BY CARRIER – CARRIER NOT RESPONSIBLE – See Clause 14.").) MSC's Planning Department determined the actual weight of the containers for the purposes of planning their placement aboard the MSC vessels, however, there was no system for the Planning

Department to cross-check the actual weight against the declared weight. (*See* Pl.'s Reply, 5-6, ECF No. 74.)

Despite MSC's argument to the contrary, there is record evidence to support Metal Worldwide's argument that MSC was, at least partially, negligent in this situation. Metal Worldwide cites to portions of the record supporting its argument that MSC was aware of the significant weight discrepancy between what was listed on the Bills of the Lading (approximately twenty-five tons) and the actual weight of the containers (approximately two tons). (Defs.' Resp. 1-2, ECF No. 66; *see also* Ciabatti Dep. 56:19-25, May 3, 2012, ECF No. 58-2.) Further, Metal Worldwide presents evidence that this weight discrepancy would cause MSC to question whether the containers actually contained shredded steel scrap. (Defs.' Resp. 6, ECF No. 66.)

Given the record, there is a genuine dispute as to whether MSC was partially negligent in causing the damages resulting from the mis-declaration of the subject containers. Accordingly, summary judgment is not appropriate as to Count III for contractual indemnification.

### D. Count X: There Is a Genuine Issue Of Fact as To Whether Sachin Chhabra Used Metal Worldwide To Perpetrate a Fraud.

MSC argues that the undisputed record evidence demonstrates that Sachin Chhabra, President of Metal Worldwide, used Metal Worldwide for a fraudulent purpose and the corporate veil should be pierced. (Mot. Summ. J. 16-17, ECF No. 58.) MSC contends that Chhabra fraudulently transferred Metal Worldwide assets in order to evade Metal Worldwide's liabilities to MSC. Chhabra responds, even if MSC's record citations are accepted, there is still insufficient evidence to warrant piercing the corporate veil. (Defs.'s Resp. 9, ECF No. 66.)

Under federal maritime law, the imposition of liability on a principal for the debts of the corporation (*i.e.*, piercing the corporate veil) is available only where the principal has used the corporate entity to perpetrate a fraud, or where the individual has so dominated and disregarded the corporate form that the corporation primarily transacted the principal's personal business rather than its own. *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008). A fraudulent transfer of funds generally involves (1) the transfer of money or other assets, (2) without receiving a reasonably equivalent value in exchange, (3) made for the purpose of avoiding a pre-existing debt. *See, e.g., In re Advanced Telecomm. Network, Inc.*, 490 F.3d 1325, 1336 (11th Cir. 2007).

MSC relies on evidence that establishes several significant ties between Metal Worldwide and a company called TCC Wireless, Inc. MSC also cites record evidence that Chhabra

transferred funds from Metal Worldwide to TCC Wireless, both before and after Metal Worldwide dissolved, and that Chhabra is now employed with TCC Wireless. (Stmt. of Material Facts ¶ 29.) While this evidence evokes a suspicious scenario, MSC has not presented sufficient evidence to obtain summary judgment.

In order to pierce the corporate veil, MSC must establish that Chhabra used Metal Worldwide to perpetrate a fraud. The fraud claimed by MSC being the fraudulent transfer of assets. Accordingly, MSC must establish that Chhabra caused the transfer of money or other assets from Metal Worldwide without receiving a reasonably equivalent value in exchange made for the purpose of avoiding MSC's pre-existing debt. *Cf. In re Advanced Telecomm. Network, Inc.*, 490 F.3d at 1336. First, MSC has failed to adequately establish that Metal Worldwide was aware of a pre-existing debt prior to the transfer of some or all of the assets to TCC Wireless. It is simply not clear, based on MSC's Statement of Material Facts, the precise date or dates that MSC communicated the existence of the debt to Metal Worldwide. Second, and more significantly, MSC has not established that Metal Worldwide did not receive a reasonably equivalent value in exchange for the transfers it made to TCC Wireless. Although this certainly appears to be the case, the Court may not rely on assumptions in ruling on a summary judgment motion. Accordingly, summary judgment will be denied as to Count X.

## IV. Conclusion

For the reasons explained in this Order, Plaintiff's Motion for Summary Judgment (ECF No. 58) is **GRANTED in part and DENIED in** part. Summary judgment is *granted* in favor of the Plaintiff, MSC Mediterranean Shipping Co. SA, Geneva, and against the Defendant, Metal Worldwide, Inc., as to Count I (Breach of Contract [Freight Charges]), and Count II (Breach of Contract [Mis-Declaration of Cargo]). Summary judgment is *denied* as to Count III (Contractual Indemnification) against Defendant, Metal Worldwide, Inc., and Count X (Piercing the Corporate Veil) against Defendant Sachin Chhabra.

**DONE and ORDERED** in chambers, at Miami, Florida, on August 7, 2012.

ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
*Counsel of record*